IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KAREN ASENIERO-BAGLEY,

    Plaintiff,

        v.                          CIVIL NO.: 11-1952 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

**I.    PROCEDURAL POSTURE**

On October 31, 2007, plaintiff Karen Aseniero Bagley ("plaintiff" or "claimant") filed an application for Social Security disability benefits, alleging disability beginning February 28, 2002. (Tr. 21). Plaintiff was insured until December 31, 2007. (Tr. 23). The claim was denied initially and upon reconsideration. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"), which took place on September 1, 2009. (Tr. 21). Plaintiff waived her right to appear and testify, but was represented by counsel at the hearing. (Tr. 31). On November 4, 2009, the ALJ rendered a decision denying plaintiff's claim. (Tr. 28). The Appeals Council denied plaintiff's request for review on July 26, 2011; thus, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"). (Tr. 1-7).

On September 27, 2011, plaintiff filed a complaint under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), as amended, alleging that the Commissioner's decision was not based on substantial evidence and requesting that the decision be reversed and an order awarding benefits be entered. (D.E. 1). On March 9, 2012, defendant filed both an answer and a certified

transcript of the administrative record.  (D.E. 9; 10).  Both parties have submitted supporting

memoranda.    (D.E. 17; 20).    For the reasons set forth below, the court finds that the

Commissioner's decision is supported by substantial evidence and affirms the same.

II.      FACTUAL BACKGROUND

A.       Plaintiff's Background

Plaintiff was born in October of 1949 and worked as a cook from 1995 through 2002 in

St. Croix before moving to Puerto Rico.  (Tr. 176).  Plaintiff indicated in her application for

benefits that she had coronary obstructive pulmonary disease ("COPD"), bronchial asthma, and

deep vein thrombosis ("DVT"), and, as a result, was first unable to work on February 28, 2002.

(Tr. 175).

Plaintiff stated in a function report that she was able to take care of personal needs,

prepare simple meals, do laundry, and put the house in order, but had her husband help her with

everything in the house.  (Tr. 48-51).  She would go shopping for food but return home quickly

due to pain, and would only drive to nearby places when going out.  Plaintiff indicated that she

could only walk for one or two minutes before resting for fifteen minutes in order to continue

again and noted severe and constant pain in her legs.

B.       The Medical Evidence Contained in the Record

1.       Insured Period

In 2006 and 2007, plaintiff went to the emergency room three times for conditions which

the ALJ concluded were unrelated to her disability.  (Tr. 26, 227, 229, 239).  These emergency

room visits were due to urinary tract infections and other genitourinary symptoms, including

vaginal discomfort.  (Tr. 26).

On October 10, 2007, Dr. Gloria Coya ("Dr. Coya") submitted a residual functional capacity ("RFC")[1] assessment, explaining that she had seen plaintiff since June 14, 2002 for COPD, DVT, large hiatal hernia, and mitral valve prolapse ("MVP"), assigning her a guarded prognosis.  (Tr. 243).  She stated that plaintiff had intermittent claudication, poor nail and hair growth, foot numbness, and foot swelling of the right and left leg.  Id.  She reported that the patient had moderate to severe pain, which was serious enough to interfere with attention and concentration.  (Tr. 244).  The affected areas involved were her left leg, calf, and ankle.  Id.  In treating these conditions, plaintiff has been on anticoagulants for many years and used stockings, although the medication made her stomach upset.  Dr. Coya noted that the impairments had lasted or could be expected to last for twelve months, and that they were reasonably consistent with the symptoms and functional limitations described in the evaluation.  Id.  She determined that plaintiff's legs should be elevated to 45 degrees when sitting for a prolonged period of time, that her impairments were "likely to produce 'good days' and 'bad days,'" and that plaintiff could not work.  (Tr. 245-46).  She concluded that plaintiff could walk without rest or severe pain, could sit for twenty minutes at a time or stand for fifteen to twenty minutes at a time, and could only sit, stand, or walk for a total less than two hours in an eight-hour work day.  Id.

On November 14, 2007, Dr. Coya submitted her first medical report, noting that plaintiff complained of shortness of breath, lower extremity pain, cramps, and swelling.  (Tr. 247).  It was noted that plaintiff had a history of dizzy spells and had asthma attacks every two to three months, and had chest pain twice a day with exercise as a precipitating factor.  (Tr. 248).  Under the "neurologic impairments" section, Dr. Coya noted plaintiff had a "bit" of feet paresthesia and feet deformity, but otherwise found no ataxia or abnormalities in the motor system or reflexes.

---

[1] An individual's residual functional capacity is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).

(Tr. 248-49).  Under the "extremities impairment" section, Dr. Coya noted that plaintiff had a "bit" of feet deformity, that inflammation was present, and that left hand and foot fractures existed.  Id.  She concluded that plaintiff was unable to work due to asthma and pain in her back and lower extremities.  Id.

### 2.      After the Insured Period[2]

On February 6, 2008, Dr. Iván Arzola, a state agency physician, reviewed the record and found that the medical evidence was insufficient to make a severity assessment.  (Tr. 260).  On May 20, 2008, plaintiff had X-rays taken on both feet.  (Tr. 267).  The X-ray showed bilateral hallux valgus that was more pronounced on the right side, claw deformity of the second digit bilaterally that was more pronounced on the right side, medial deviation of the second through fifth digits bilaterally, bilateral pes planus, and no gross acute fracture, dislocation or destructive bone lesions.  Id.

Plaintiff went to the emergency room for left leg pain on May 22, 2008, and for an open knee wound on May 27, 2008.  (Tr. 57, 222).  On June 10, 2008, Dr. Coya explained in her second medical report that she was treating plaintiff for recurrent DVT in her left leg, COPD, MVP, a "bit of feet pain," left leg edema, erythema, numbness, and hallux valgus.  (Tr. 293).  She noted a poor response to treatment and the presence of moderate/severe pain.  She concluded that plaintiff has had MVP since 1974, has pain when standing or at rest, and could not tolerate an 8 hour work day.  (Tr. 293-295).

---

[2] To qualify for Social Security disability benefits, a claimant has the burden to show that she was disabled during the coverage period, which is the time period between the alleged disability onset date and the date last insured.  See 42 U.S.C. § 416(i); Alcaide v. Sec'y of Health & Human Servs., 601 F.Supp. 669, 672 (D.P.R. 1985); Sampson v. Califano, 551 F.2d 881, 882 (1st Cir. 1977).  Accordingly, evidence that does not pertain to proving disability during the coverage period should not be considered by an ALJ to determine whether claimant is disabled.  Nevertheless, "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity before his insured status expired." Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552, at *5 (1st Cir. 1993) (unpublished) (citing Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 81 (1st Cir. 1982); Alcaide, 601 F.Supp. at 672-73).

On July 14, 2008, Dr. Idalia Pedroza ("Dr. Pedroza"), a state agency physician, concluded that the medical evidence was insufficient to make a severity assessment. (Tr. 269). In August 2008, Dr. Antonio Aponte García ("Dr. Aponte"), an internist, submitted a consultative report after examining plaintiff. (Tr. 270). He noted plaintiff had no joint pain in either hand and was able to use them normally with full strength. (Tr. 271). Dr. Aponte observed a normal gait, no muscle atrophy, and full strength in lower extremities. (Tr. 270-78). In a history report of plaintiff made after speaking with her, Dr. Aponte noted that plaintiff explained she was diagnosed with asthma when she was twenty-five years old while in the hospital for three days due to respiratory illness. (Tr. 276). Since then, she had occasional episodes of asthma, but her last visit to the hospital for asthma was eight years prior and has since been controlled by medicine. Id. In the report, plaintiff explained she had DVT for one month in 1975, but treatment was effective until its recurrence in 2008. Id. Dr. Aponte noted that plaintiff denied chest pains, but referred to occasional palpitations. (Tr. 277). He also explained that she referred to ankle pain when she would stand for prolonged time, as well as hip, neck and back pain since last year. Id. After the examination, Dr. Aponte concluded that plaintiff had mild tenderness in those areas with pain, was neurologically intact, and had a regular heartbeat. Id. He described her as having a guarded prognosis and able to stand or walk for three to four hours and sit up to eight hours intermittently. (Tr. 278).

In August of 2008, Dr. Domingo Chardón conducted a pulmonary function test as part of a Consultative Examination Report and noted that plaintiff's results were comparable with mild restrictive ventilatory impairment. (Tr. 279).

### III.   LEGAL STANDARD

#### A.        Standard of Review

Once the Commissioner has rendered his final determination on the claimant's application for disability benefits, a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence.  Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error."  López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner [ ] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence."  Hernández-Guzmán v. Astrue, 2009 U.S. Dist. LEXIS 99213, at *5 (D.P.R. Oct. 23, 2009) (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971), cert. denied, 402 U.S. 976).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir.

1986) (per curiam); <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st

Cir. 1991) (per curiam)).  Moreover, a determination of substantiality must be made based on the

record as a whole.  <u>See</u> <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citing <u>Rodríguez v. Sec'y of Health &

Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)).  However, "[i]t is the responsibility of the

[ALJ] to determine issues of credibility and to draw inferences from the record evidence."  <u>Id.</u>

Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably

could justify a different conclusion, so long as it is supported by substantial evidence."

<u>Rodríguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B.      Disability under the Social Security Act

To establish entitlement to disability benefits, the claimant bears the burden of proving

that he or she is disabled within the meaning of the Social Security Act.  <u>See</u> <u>Bowen v. Yuckert</u>,

482 U.S. 137, 146 n.5, 146-47 (1987).  An individual is deemed to be disabled under the Social

Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S. C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according a five-step sequential process.  20

C.F.R. § 404.1520; <u>Barnhart v. Thomas</u>, 540 U.S. 20, 24-25 (2003); <u>Cleveland v. Policy Mgmt.</u>

<u>Sys. Corp.</u>, 526 U.S. 795, 804 (1999); <u>Yuckert</u>, 482 U.S. at 140-42.  If it is determined that the

claimant is not disabled at any step in the evaluation process, then the analysis will not proceed

to the next step.  At step one, it is determined whether the claimant is working and thus engaged

in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, then disability benefits are

denied.  20 C.F.R. § 404.1520(b).  Step two requires the ALJ to determine whether the claimant

has "a severe medically determinable physical or mental impairment" or severe combination of

impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If he does, then the ALJ determines at step three whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, then the claimant is conclusively found to be disabled.  20 C.F.R. § 404.1520(d).  If not, then the ALJ at step four assesses whether the claimant's impairment or impairments prevent her from doing the type of work he or she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five.  At this final step, the ALJ evaluates whether the claimant's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy.   20  C.F.R.  § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

Under steps one through four, the plaintiff has the burden of proving that he cannot return to his former job because of his impairment or combination of impairments.  Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam).  Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform."  Id.

IV.    ANALYSIS

The findings of the ALJ reflect an application of the second step of the sequential evaluation process in which plaintiff must show that she has a medically determinable impairment that is "severe," significantly limiting her ability to do basic work activities.  See 20 C.F.R. § 404.1520(a)(4)(ii).  After examining all of the evidence, the ALJ determined that plaintiff was not disabled because she failed to meet her burden of showing that she had a severe medically determinable impairment.

Plaintiff asserts that the ALJ erred in ending the sequential evaluation process at step two. (D.E. 17, at 5).  She points out that an impairment is "not severe" where the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  Social Security Ruling 85-28 ("SSR 85-28").  As such, plaintiff contends, the ALJ applied the wrong standard because the evidence "clearly demonstrated a more than slight impairment."  (D.E. 17, at 9).  Plaintiff argues that, in making this decision, the ALJ did not adequately evaluate the opinion of her treating physician Dr. Coya, and that the ALJ improperly interpreted raw medical data in a record when he was not qualified to do so as a layperson.  Id. at 20-21.  Consequently, plaintiff contends that the ALJ's decision is not supported by substantial evidence.

At step two of the sequential evaluation process, it is the plaintiff's burden to prove that she has a medically determinable severe impairment or a combination of medically determinable impairments.  See Ramos v. Barnhart, 60 Fed. Appx. 334, 335 (1st. Cir. 2003) (citing Bowen v. Yuckert, 482 US 137, 146 n.5 (1987)).  For an impairment to be severe, it must significantly limit a claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c); see also Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1 (1st Cir. 1987) (per curiam).  SSR 85-28 clarifies "the policy for determining when a person's impairment(s) may be found 'not severe.'"  The First Circuit, interpreting SSR 85-28, has determined that "a claim may be denied at step two … where medical evidence establishes only a slight abnormality … which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered …."  Ramos, 60 Fed. Appx. at 335 (citing Barrientos, 820 F.2d at 2); see also Andrades v. Sec'y of Health & Human Servs., 790 F.2d 168, 171 (1st Cir. 1986).  Thus, SSR 85-28 establishes a "*de minimis* policy, designed

to do no more than screen out groundless claims." McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986).

However, "a medically determinable impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by plaintiff's statement of her symptoms." 20 C.F.R. § 404.1508; see Faria v. Comm'r of Soc. Sec., 187 F.3d 621 (1st Cir. 1998). Accordingly, an individual must be found not disabled at step two of the sequential evaluation process in the absence of a showing that there is a medically determinable impairment. SSR 96-4p. After examining all of the evidence, the ALJ found that plaintiff did not establish that she had a medically determinable impairment, because there were no medical signs or laboratory findings to substantiate the existence of a physical impairment.

Nonetheless, plaintiff argues that the ALJ's decision is not supported by substantial evidence, because the opinion of her treating physician Dr. Coya was not properly evaluated. She contends that it establishes she is severely disabled because it is "complete and consistent within itself." (D.E. 17, at 20). Accordingly, she argues that the opinion should have been given controlling weight in evaluating the severity of her impairment.

Generally, ALJs should give "more weight to the opinions from the claimant's treating physicians, because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments." 20 C.F.R. § 404.1527(d)(2). The ALJ will "give controlling weight to the opinions of treating physicians if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record." Id. However, the First Circuit has recognized "that when a treating doctor's opinion is poorly supported or inconsistent with other substantial evidence, the requirement of controlling weight does not apply." Hutchins v. Astrue,

No. 09cv10900-NG, 2010 WL 3895183, at *5 (D. Mass., Sept. 30, 2010); Berríos Vélez v. Barnhart, 402 F. Supp. 2d 386, 391 (D.P.R. 2005).  If the ALJ opts not to give controlling weight to the treating physician, he must provide a valid reason.  Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, the ALJ found that it was not appropriate to give controlling weight to the treating physician's medical opinion because it was "not well-supported by medically acceptable clinical and laboratory diagnostic techniques," it was internally inconsistent, and it was inconsistent with other substantial evidence.  (Tr. 27).  The ALJ determined that Dr. Coya's reports "provided very little explanation of the evidence relied by Dr. Coya [*sic*] in forming her opinion."  (Tr. 27).  There were no laboratory findings whatsoever during the relevant period showing abnormalities in coagulation.  Neither of Dr. Coya's medical reports details any laboratory findings.  Moreover, the ALJ found Dr. Coya's medical reports to be inconsistent with each other.  In her first medical report, Dr. Coya noted intermittent claudication and foot numbness and swelling.  She concluded that plaintiff could not walk without rest or severe pain, could sit for twenty minutes at a time or stand for fifteen to twenty minutes at a time, and could only sit, stand, or walk for a total less than two hours in an eight-hour work day.  However, one month later, she reported plaintiff only had a "bit" of feet paresthesia and feet deformity, but no abnormalities in the motor system and reported a normal gait with no ataxia, and a lumbar range of 70 degrees during flexation.  Although plaintiff points out that the "bit" language is used in relation to neurological examination and not circulatory, it is also used in describing the extremities section, which is consistent with the ALJ's interpretation.

Furthermore, the ALJ determined that Dr. Coya's opinion was inconsistent with other substantial evidence. The ALJ notes that plaintiff conceded to Dr. Aponte that the DVT was

11

treated effectively until 2008 when the leg pain returned, and that her asthma had improved when she moved to Puerto Rico in 2002.  After the relevant period, a spirometry test was done and found that she had only mild defect inconsistencies, and an examination done by Dr. Aponte noted no tenderness of joints, no limitation to range of motion, and normal gait.  Therefore, the ALJ provided valid reasons for not granting controlling weight to the opinion.

Plaintiff also argues that the ALJ failed "to provide specific reasons for the weight given to the medical opinions required in order to make clear to any subsequent reviewers the weight the Commissioner gave to the treating source's medical opinion." (D.E. 17, at 3).  However, the ALJ sufficiently explained the weight assigned to Dr. Coya's medical opinion by pointing to its lack of support, its internal inconsistency, and its inconsistency with the rest of the medical record, which are factors that an ALJ should use in evaluating the weight of opinion evidence. 20 C.F.R. § 404.1527.  Here, the ALJ unambiguously determined that the plaintiff is not disabled because she has not met her burden to show she has an impairment established by objective medical evidence.  Therefore, it is clear that the ALJ did not give controlling weight to the opinion of Dr. Coya, because "a case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion."  SSR 96-2p.

Finally, plaintiff maintains that in making this decision, the ALJ improperly interpreted raw data in a medical record by substituting his own impression of an individual's health with Dr. Coya's medical opinion when he determined that she did not have a severe impairment. However, this contention is contrary to the reasoning in the decision. The ALJ did not rely on his own impression of plaintiff's health, but on the lack of medical evidence necessary to show a severe impairment, which is consistent with Dr. Pedroza's conclusion that the medical evidence available is insufficient to make a severity assessment.  Furthermore the ALJ considered

evidence inconsistent with someone with a severe impairment, such as plaintiff's ability to do some chores around the house and her ability to drive a car.  Therefore, there is no indication that the ALJ interpreted raw medical data.

V.      CONCLUSION

Because it was based on substantial evidence, the Commissioner's decision is hereby

**AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 5th day of February, 2013.

s/Marcos E. López
U.S. Magistrate Judge
